[Cite as *State v. Johnson*, 2023-Ohio-918.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MELVIN E. JOHNSON JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0096**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 13 CR 380D

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor*, Atty. Edward A. Czopur,* Assistant Mahoning County Prosecutor*,* Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503 for Plaintiff-Appellee and

*Atty. Gregory S. Robey*, Robey & Robey, 14402 Granger Road, Cleveland, Ohio 44137 for Defendant-Appellant.

Dated: March 21, 2023

_____

**Robb, J.**

{¶1} Defendant-Appellant Melvin E. Johnson Jr. appeals the decision of the Mahoning County Common Pleas Court denying his motion for leave to file a new trial. He contends he was entitled to leave because he presented clear and convincing proof he was unavoidably prevented from discovering the evidence he relied on in moving for a new trial. He alternatively contends he was entitled to a hearing on his motion for leave and to findings of fact and conclusions of law. We conclude Appellant was not entitled to leave, a hearing, or findings of fact and conclusions of law. Accordingly, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On May 21, 2015, an indictment was filed against Appellant in a pre-existing case against other defendants.[1] He was tried jointly with Vincent Moorer at a bench trial in March 2017. Appellant was convicted of the attempted murder of John Willie Myles (with a firearm specification), having a weapon while under disability, and engaging in a pattern of corrupt activity (which included federal drug offenses and was a first-degree felony due to the attempted murder).

{¶3} At trial, Morris Perry testified he was a member of a large-scale drug distribution organization led in part by Moorer with Appellant considered a triggerman and drug transporter for the organization. (Tr. 453-457, 463-464, 470, 473). After one of his dealers was robbed, Moorer kept the dealer's phone to communicate with the person who allegedly orchestrated the robbery. On March 20, 2014, Moorer and Perry were at Appellant's house while Moorer was texting this individual, who turned out to be Myles. The texts were admitted as evidence. As the texts were read aloud, Appellant participated in the conversation. (Tr. 490-494). They set up a meeting with Myles near an intersection on South Avenue. (Tr. 492, 625-626).

{¶4} Perry said he was in the front passenger seat and Appellant was in the back seat of a vehicle Moorer drove to the meeting location. (Tr. 493). According to Perry, Appellant exited the vehicle with a gun. (Tr. 495-496). As Perry and Moorer waited in

_____

[1] Mahoning C.P. No. 13 CR 380 D.

Case No. 22 MA 0096

the parking lot of a car wash, Perry heard gunshots and saw the victim run across the street and fall. (Tr. 497-498). After Appellant returned to the vehicle, Moorer drove away as Appellant reported he had the opportunity to pull out his gun and shoot when the victim asked him for a lighter. (Tr. 499). The police found Myles near the scene with multiple gunshot wounds. (Tr. 400, 416, 424). His words were recorded at the scene by an officer who found him yelling for help. (Tr. 418-422); (St.Ex. 555). Myles did not appear at trial to testify.

{¶5} A video from the car wash showed a car (matching the description provided by Perry) in the parking lot for a few minutes. A neighbor who heard the gunshots confirmed seeing the vehicle pull out of the car wash and retrieve a man. (Tr. 391-392). An occupant of a nearby vehicle noticed gunfire coming from that direction and saw a light-skinned black man standing with a handgun as another man ran away screaming for help. (Tr. at 377-379). Six 9mm shell casings were recovered; they were all fired from the same firearm. (Tr. 435).

{¶6} After being convicted of the aforementioned charges, the court sentenced Appellant to maximum consecutive sentences for a total of 28 years to run consecutive to his federal sentence. (3/22/17 J.E.). His two federal convictions were for conspiracy to possess with intent to distribute heroin and use of a telephone to facilitate drug trafficking. (Tr. 107); (St.Ex. 407). On appeal, this court affirmed. *State v. Johnson*, 7th Dist. Mahoning No. 17 MA 0050, 2019-Ohio-1089.

{¶7} On February 23, 2022, Appellant filed a motion requesting counsel. He said the discovery in his case was sealed, he was incarcerated out-of-state in a federal prison, and he had new evidence. He attached affidavits from Myles and Perry. The trial court denied the request for counsel. (2/28/22 J.E.).

{¶8} On June 22, 2022, an attorney representing Appellant filed a motion for leave to file a new trial motion, stating the motion for new trial was incorporated in the motion for leave. A memorandum of law and three exhibits were attached.

{¶9} Exhibit A was the affidavit of John Myles. He said he was using drugs during the time in his life when he was shot. He relayed the following information about the shooting: he thought he recognized a friend when he was walking on South Avenue; he asked the man for a lighter, but the man pulled out a gun and started shooting; he did not lose consciousness; the shooter was 6'1" to 6'3" wearing a hoodie with a dark complexion;

he knew Appellant his whole life and thought of him as his cousin; and the shooter was lighter and taller than Appellant. In the affidavit, Myles said he told the detective Appellant was like family and was not the shooter while refusing to name Appellant as the shooter from a photo line-up. The affiant then said, "it would be untrue for anyone to say I told them Melvin Johnson shot me or was in any way responsible." His signature was notarized on September 17, 2021.

{¶10} Exhibit B was the affidavit of Morris Perry, which stated: "I never participated nor had direct knowledge of a criminal enterprise comprised of Vincent Moorer, Melvin Johnson, [and four other people]. The only reason I testified to this previously was due to the combination of pressure and coercion of local law enforcement and incentive of no prison time in an unrelated case." (The next line claimed a lack of knowledge about murder victims in a case not involving Appellant.) Perry's signature was not on the page with these statements but was on a separate page; the signature was notarized on January 28, 2021.

{¶11} Exhibit C was a statement signed by Appellant on June 7, 2022; he calls it a sworn statement, but it was not notarized. He made the following claims: he was in federal prison out-of-state; his mom obtained a copy of Perry's affidavit after Perry sent it to a third party in the spring of 2021; Myles contacted Appellant's father in September 2021 about making a statement; and Appellant's father hired a private investigator to secure an affidavit from Myles. Appellant's statement concluded the information in the affidavits was exculpatory, was not available at the time of trial, could not have been discovered with reasonable diligence, and was not provided to him until more than 120 days after the verdict.

{¶12} Appellant's motion for leave concluded he was unavoidably prevented from discovering the information in the affidavits within 120 days of the conviction because the individuals did not come forward with the information until recently and he was unable to contact witnesses as he was continuously incarcerated. It was then argued the information was newly discovered evidence as it could not have been discovered at trial with reasonable diligence and was material, not merely cumulative, and outcome-determinative.

{¶13} The state's opposition argued a movant cannot merely allege he was unavoidably prevented from discovering the information based on the date of the

affidavits or his incarceration. It was emphasized the two affiants made no reference to Appellant's delay. The state pointed to Appellant's knowledge of Myles and the opportunity to speak to Myles (his lifelong family-like friend) before trial or secure his appearance at trial. The state also pointed to Appellant's pretrial allegations about Perry recanting, noting he was pressured by organization members; it was noted a related audio recording was provided to the state *by the defense* in discovery. The state alternatively argued the evidence was not newly discovered, could have been discovered with reasonable diligence, was not credible, and added nothing or merely contradicted former evidence in a generalized way.

{¶14} On July 22, 2022, the court overruled Appellant's motion. The within appeal followed where Appellant remains represented by counsel.

<u>GENERAL NEW TRIAL LAW</u>

{¶15} The trial court can grant a new trial on the defendant's motion if his substantial rights were materially affected when "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). "When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given * * *." *Id.*

{¶16} Nevertheless, the rule does not mandate an oral, evidentiary hearing on every motion, and the "trial court holds the discretion to decide whether a Crim.R. 33 hearing should be held." *State v. Baer*, 7th Dist. Harrison No. 16 HA 0015, 2017-Ohio-7759, ¶ 12. Likewise, the denial of a motion for new trial is reviewed under the abuse of discretion standard of review. *State v. Hawkins,* 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993). A Crim.R. 33(A)(6) motion for a new trial cannot be granted unless the defendant shows the new evidence: (1) discloses a strong probability the result will change if a new trial is granted; (2) has been discovered since trial; (3) could not have been discovered before trial in the exercise of due diligence; (4) is material; (5) is not merely cumulative to prior evidence; and (6) does not merely impeach or contradict prior evidence. *Id.*, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶17} There are time requirements for new trial motions. "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after

the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." Crim.R. 33(B). However, "If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id.* The trial court's refusal to grant leave to file an untimely motion for a new trial is also reviewed for an abuse of discretion. *State v. McNeal*, __ Ohio St.3d __, 2022-Ohio-2703, __ N.E.3d __, ¶13, 24.

**{¶18}** If the court does not grant leave, then the motion for new trial need not be addressed (and cannot be addressed if not yet filed). "Leave must be granted before the merits are reached." *State v. Lordi*, 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605, ¶ 25 (7th Dist.). The rule anticipates a two-step procedure, but a motion for new trial is sometimes filed simultaneously with the motion for leave due to the short seven-day deadline to file if leave is granted.

**{¶19}** The defendant's burden on a motion for leave to file a new trial motion is more than a preponderance of the evidence. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). To meet the clear and convincing standard, the evidence must "produce in the mind of the trier of facts a firm belief or conviction" that he was unavoidably prevented from discovering the facts sought to be established. *Id.* The parties agree a defendant "is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Lordi*, 149 Ohio App.3d 627 at ¶ 26, 29, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

ASSIGNMENTS OF ERROR

**{¶20}** Appellant sets forth two related assignments of error:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SUMMARILY DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE, WITHOUT A HEARING."

"THE TRIAL COURT ERRED IN SUMMARILY DENYING APPELLANT'S MOTION WITHOUT MAKING ANY FACTUAL FINDINGS OR CONCLUSIONS OF LAW

OR HOLDING A HEARING, THEREBY ABUSING ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL."

**{¶21}** The main difference in the text of the assignments is the reference to findings of fact and conclusions of law. The plain language of Crim.R. 33 does not require the court to issue findings of fact and conclusions of law when denying a motion thereunder. *See State v. Harrison*, 2d Dist. Montgomery No. 28652, 2022-Ohio-407, ¶ 55; *State v. Girts*, 121 Ohio App.3d 539, 565, 700 N.E.2d 395 (8th Dist.1997) (even the comparable civil rule, Civ.R. 59(A), only instructs a court to specify the grounds in writing if the court *grants* a new trial). *Compare* R.C. 2953.21(D),(H) (specifically requiring findings of fact and conclusions of law in dismissing or denying a post-conviction relief petition). The Supreme Court therefore held a trial judge "had no duty to issue findings of fact and conclusions of law when he denied [the defendant's] Crim.R. 33 motion for a new trial." *State ex rel. Collins v. Pokorny*, 86 Ohio St.3d 70, 711 N.E.2d 683 (1999) (new trial motion filed five years after trial), citing *Girts*, 121 Ohio App.3d at 565. Likewise, "a trial court is not required to issue findings of fact and conclusions of law when denying without a hearing a motion for leave to file a delayed motion for new trial." *State v. Briscoe*, 8th Dist. Cuyahoga No. 110490, 2021-Ohio-4317, ¶ 27.[2]

**{¶22}** The common thread of both assignments of error is the contention the trial court erred in failing to grant Appellant's motion for leave to file a motion for a new trial or in failing to hold a hearing on the motion for leave. Appellant points out there is case law holding: "A defendant is entitled to a hearing on his motion for leave if he submits 'documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence' at issue." *State v. Blalock*, 8th Dist. Cuyahoga No. 100194, 2014-Ohio-934, ¶ 44, quoting *State v. Brown*, 8th Dist. Cuyahoga No. 95253, 2011-Ohio-1080, ¶ 14, quoting *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-

---

[2] There is no issue concerning the applicability of Civ.R. 52 because Appellant did not file a motion for findings of fact and conclusions of law. *See* Civ.R. 52 ("When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before "[certain deadlines]").

1181, 869 N.E.2d 77, ¶ 19 (2d Dist.). In other words, to warrant a hearing, those documents must entitle the movant to leave if they are taken as true. *See id.*

**{¶23}** Still, the Eighth District recently held a defendant is not entitled to a hearing before his motion for leave is denied where he claims the state failed to produce a statement in discovery but there are no facts in the record supporting this claim. *Briscoe*, 8th Dist. No. 110490 at ¶ 26. As set forth in the prior section, Crim.R. 33 mentions a hearing on a motion for new trial, but the hearing is still considered discretionary. The rule does not mention a hearing on a motion for leave. We also note Appellant did not request such a hearing.

**{¶24}** "One way that a defendant may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) is by establishing that the prosecution suppressed the evidence on which the defendant would rely when seeking a new trial." *McNeal*, __ Ohio St.3d __, 2022-Ohio-2703 at ¶ 2. In *McNeal*, the defendant's motion for leave was accompanied by the affidavit of the defendant's trial counsel establishing a *Brady* violation by the state's failure to disclose in discovery the victim's blood alcohol test, which tended to disprove an element of rape and impeach the victim's testimony about her ability to resist or consent being substantially impaired. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (duty to disclose favorable and material evidence) and *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (same rule applicable to impeaching evidence). The Supreme Court concluded the defendant's motion for leave to file a new trial motion should have been granted because his counsel's affidavit set forth a prima facie case that he was unavoidably prevented from timely moving for a new trial due to the prosecution's failure to make required disclosures and the state failed to respond to the motion for leave. *McNeal*, __ Ohio St.3d __, 2022-Ohio-2703. The Court remanded with instructions to grant leave to file a motion for a new trial, without remanding for a hearing on the motion for leave. *Id.* at ¶ 27 (noting the trial court prematurely made rulings relevant to an *unfiled* new trial motion).

**{¶25}** Here, counsel did not file an affidavit, such as to assert a failure to disclose by the prosecution and to assure the court he reviewed the discovery, or cite to the record in support. Additionally, although a failure to disclose is claimed on appeal, the motion for leave did not raise an allegation that the state failed to disclose information. Moreover,

Case No. 22 MA 0096

the state responded to the motion for leave in this case, and the record does not support various contentions made or implied by Appellant's motion for leave.

**{¶26}** The affidavit of Myles attached to Appellant's motion for leave said Myles knew Appellant his whole life and considered him family (calling Appellant a cousin and calling his father an uncle). He did not refer to any reason for a delayed statement. As the state pointed out in responding to Appellant's motion for leave, Myles (the shooting victim) did not testify at trial and his recorded utterances at the shooting scene were disclosed to the defense before trial and played for the court trial. He said he did not know who shot him when asked multiple times while awaiting the ambulance. Myles also said this at the line-up interview with the detective, which was recorded and disclosed to the defense in discovery.

**{¶27}** Moreover, a pro se motion filed by Appellant months before trial emphasized that Myles told the detective he would not believe Appellant shot him. The state's response to the motion for leave pointed out Appellant did not attempt to secure the appearance of Myles at trial where information could have been directly elicited from him. Instead, trial counsel utilized the detective on cross-examination to show Myles did not identify Appellant as the shooter. (Tr. 637-638). It was known Myles was not asserting Appellant shot him. The identification of Appellant as the shooter came from Morris Perry.

**{¶28}** As for Perry, the assertion on appeal that the state failed to disclose Perry's plea agreement is contradicted by the record. At a February 21, 2017 pretrial, the court was informed Perry was offered a deal, with the state recommending community control in exchange for his guilty plea in his drug case and for his continued cooperation in this case. The prosecutor pointed out the defense had already been provided a copy of the plea agreement. It was also noted that Appellant watched Perry's video statement with counsel. Perry subsequently testified at trial in accordance with his video statement, and his plea deal was discussed during testimony. (Tr. 526). Defense cross-examined Perry on his plea and on his various claims.

**{¶29}** Perry's affidavit attached to Appellant's motion for leave claimed he had no direct knowledge of a criminal enterprise involving Appellant, Moorer, and others and claimed he testified differently because he was pressured by law enforcement and provided an "incentive of no prison time in an unrelated case." This is not a recantation

of the testimony on Appellant shooting Myles (or why); however, Appellant believes the affidavit would affect his conviction of engaging in a pattern of corrupt activity. Perry merely provided a generalized statement denying "direct knowledge" of a "criminal enterprise," rather than a specific recantation of pertinent facts. Appellant would know whether he was a part of a drug ring at the time he listened to Perry's statement with his attorney before trial. It was thus the fact of Perry potentially being willing to say something different that Appellant alleges he was unavoidably prevented from discovering within 120 days of trial.

{¶30} However, as the state reminded the trial court in responding to Appellant's motion for leave, Appellant's awareness of Perry's inconsistencies, including an alleged recantation was already on the record. *A year before trial*, the state filed a motion in limine informing the court *the defense* provided an audio recording in discovery wherein Perry (who was secretly recorded) told an organization member he lied in his statement to police and would not be cooperating. The state argued Perry was under duress and in fear. In addition, *months before trial*, Appellant filed a pro se motion to strike Perry's testimony, arguing, in part, any testimony consistent with Perry's statement to police would be perjury and claiming the audio should be considered a recantation; the motion was later renewed by counsel.

*{¶31}* Also, Perry's affidavit makes no reference to the timing of his newest claim that he lacked direct knowledge of a criminal enterprise. The burden is on the petitioner to show by clear and convincing proof how he was unavoidably prevented from timely discovering the evidence. *Schiebel*, 55 Ohio St.3d at 74. Appellant mentions his own incarceration in claiming he was unavoidably prevented from discovering the information known by the affiants. However, the mere fact of incarceration does not show a movant was unavoidably prevented from learning facts; even an incarcerated movant must explain "how he has been prevented from contacting the affiant." *State v. Moore*, 7th Dist. Mahoning No. 13 MA 9, 2014-Ohio-358, ¶ 24.

{¶32} Appellant also relies on the date of the affidavits and his receipt of them. However, "an affidavit signed outside the rule's timeframe does not necessarily indicate that the petitioner was unavoidably prevented from obtaining the evidence or that it is clear and convincing proof." *State v. Franklin*, 7th Dist. Mahoning No. 09 MA 96, 2010-Ohio-4317, ¶ 19. It is "unreasonable for [the movant] not to have attempted to contact

[the affiant] sooner" where he knew about the allegedly false testimony he heard at his own trial. *Moore*, 7th Dist. No. 13 MA 9 at ¶ 24. Appellant said his mother got a copy of Perry's affidavit from an unnamed third party and Myles contacted his father so his father hired an investigator to secure an affidavit. Appellant essentially claims he was unavoidably prevented from discovering the information because it was not bestowed upon him earlier. However, "[t]he phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 11. The court is "not required to make suppositions about the reasons for the delay." *Id.* at ¶ 12 (where one affidavit provided no reason for the delay in recanting testimony and other provided unconvincing reason).

**{¶33}** Under the Eighth District case relied on by Appellant, a hearing on the motion for leave would not be required, as the documents do not facially support a claim that he was unavoidably prevented from timely discovering the evidence upon which his motion for new trial could rely. *See Blalock*, 8th Dist. No. 100194 at ¶ 44. The trial court did not abuse its discretion in refusing to grant leave to file the new trial motion and thus denying the untimely new trial motion filed therewith. Appellant's assignments of error are overruled.

**{¶34}** As a final observation, we also note that even if leave were granted and the merits of the submitted new trial motion were reviewed, there would be no abuse of discretion by the trial court in denying the motion Appellant decided to submit with his motion for leave. We rely on our various observations set forth above as to assertions on knowledge, ability to know, and timing. The test for newly discovered evidence for a new trial motion is not merely "newly available" evidence. *State v. Thomas*, 7th Dist. Mahoning No. 18 MA 0132, 2020-Ohio-3637, ¶ 58 (where the information in the affidavit is about the defendant's participation, the defendant had prior knowledge of the information). Appellant was convicted at a bench trial by the same judge who was ruling on the motion. The judge heard the testimony by Perry at trial as compared to the generalized affidavit (that did not mention the shooting or any other facts). The judge was forced to seal parts of the record and presided through pretrial issues with a fearful witness being secretly

recorded while claiming he would be recanting. At trial, Perry even disclosed he previously attempted to pay a victim to sign a false affidavit for Moorer.

**{¶35}** Notably, the sixth factor for granting a new trial (in the case Appellant cites) states, the evidence must "not merely impeach *or contradict* the former evidence." *See Petro*, 148 Ohio St. 505 at syllabus. Appellant omitted the italicized portion from his analysis below. Moreover, the trial court could reasonably conclude the affidavit did not disclose a strong probability the result would be different. Perry's prior testimony would be admissible in any new trial. *See* Evid.R. 801(D). The trial court could likewise reasonably conclude Perry's affidavit did not provide substantial grounds for relief requiring an evidentiary hearing on a motion for new trial (if leave had been granted).

**{¶36}** As for the affidavit of Myles, his newest statement was merely cumulative. Appellant's motion did not acknowledge that Myles, who was the shooting victim, did not appear at trial to testify. The motion provided no explanation as to why Appellant did not secure his presence at trial or attempt a pre-trial interview of this life-long family-like friend. At the bench trial, the judge heard the defense utilize the detective to demonstrate Myles did not identify Appellant as the shooter. There was no indication the information from Myles was not known (or could not have been discovered before trial in the exercise of due diligence). *See id.* Accordingly, any alternative argument within Appellant's brief on entitlement to a new trial is overruled (even if leave to file a new trial motion should have granted).

**{¶37}** For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

D'Apolito, P. J., concurs.

Case No. 22 MA 0096

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**