[Cite as *State v. Knowlton*, 2024-Ohio-5869.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

SHANE PATRICK KNOWLTON, SR.,

      Defendant-Appellant.

**CASE NO. 2024-A-0054**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 00355

**O P I N I O N**

Decided: December 16, 2024
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Mark Majer*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Shane Patrick Knowlton, Sr.*, pro se, PID# A801-977, Correctional Reception Center, 11271 State Route 762, P.O. Box 300, Orient, OH 43146 (Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Shane Patrick Knowlton, Sr., appeals from the judgment of the Ashtabula County Court of Common Pleas, denying his postconviction petition and request for leave to file a motion for a new trial. For the following reasons, we affirm the judgment of the lower court.

{¶2} On August 17, 2021, Knowlton was indicted by the Ashtabula County Grand Jury for Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and an accompanying firearm specification.

{¶3} A jury trial was held at which testimony was presented that Knowlton and

another man, Ryan McBride, engaged in a dispute through text messages. After the two discussed fighting, McBride drove to Knowlton's location, handed a gun to his friend, and then approached Knowlton. Knowlton fired his gun and hit McBride multiple times. The jury found Knowlton guilty of Felonious Assault and the firearm specification. The court sentenced Knowlton to serve an indefinite sentence of four to six years in prison for Felonious Assault and a three-year consecutive term for the firearm specification.

{¶4} Knowlton appealed to this court. *State v. Knowlton*, 2023-Ohio-3759 (11th Dist.). On appeal, Knowlton's counsel assigned error relating to whether his conviction was supported by the weight of the evidence and this court affirmed his conviction. *Id.* at ¶ 17-26. This court subsequently overruled his motions to reopen and for reconsideration.

{¶5} Knowlton filed a Request for Leave to File Motion for New Trial on April 8, 2024, and a Petition to Vacate and/or Set Aside Judgment of Conviction on April 16, 2024, raising various issues with the prosecutor's and defense counsel's actions at trial. The trial court denied these motions in a May 20, 2024 Judgment Entry. It found the following:

> [The] Defendant has not presented sufficient credible supporting evidence to warrant an evidentiary hearing on his petition. This judge is the same judge that presided over the Defendant's original trial. The Defendant was given court-appointed counsel for both his trial and his appeal. Further, the Ohio Supreme Court denied review of this matter.
>
> Now the Defendant is seeking essentially a fourth bite-at-the apple. All of the information that the Defendant now submits to this Court was available to him at the time he filed his appeal. With the exception that the Defendant wants this Court to unseal the Grand Jury Transcripts from his case, which this Court will not do. None of the facts the Defendant now raises were contained in the Defendant's appeal, and this argument is not based on newly discovered evidence.

{¶6} Knowlton timely appeals and raises the following assignments of error:

{¶7} "1. The trial court deprived Appellant of his right to due process under the Fourteenth Amendment by failing to make adequate findings of fact and conclusions of law before denying Appellant's Petition for Post-Conviction Relief Motion as required by R.C. 2953.21.

{¶8} "2. The trial court erred by failing to hold a hearing on the Appellant's Petition for Post-Conviction Relief.

{¶9} "3. The trial court abused its discretion by denying defendant's motion for leave to file a motion for new trial without a hearing.

{¶10} "4. The defendant's Constitutional rights to due process afforded by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the ineffective assistance of trial counsel.

{¶11} "5. The defendant's Constitutional rights to due process afforded by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by the prosecutorial misconduct.

{¶12} "6. The trial court erred by failing to instruct the jury on the inferior offense of Aggravated Assault where serious provocation was present."

{¶13} Knowlton's first two assignments of error relate to the denial of his postconviction petition.

{¶14} "A person . . . may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence . . . who has been convicted of a criminal offense . . . and who claims that there was such denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United

3

Case No. 2024-A-0054

States." R.C. 2953.21(A)(1)(a)(i). "Before granting a hearing . . ., the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, [and] all the files and records pertaining to the proceedings against the petitioner. . . ." R.C. 2953.21(D). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues. . . ." R.C. 2953.21(F).

{¶15} Courts of appeal "review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard." *State v. Hatton*, 2022-Ohio-3991, ¶ 38. "However, if a trial court denies a petition on legal grounds, e.g., by application of the doctrine of res judicata, this court's review is de novo." *State v. Davies*, 2017-Ohio-7961, ¶ 12 (11th Dist.).

{¶16} In his first assignment of error, Knowlton argues that the lower court "failed to make adequate findings of fact and conclusions of law as required by R.C. 2953.21(D)," and did not make specific findings to support the denial of each individual claim raised in his postconviction petition.

{¶17} R.C. 2953.21(D) provides: "If the court dismisses the [postconviction] petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal." "R.C. 2953.21 requires the trial court to consider the allegations of the petition for postconviction relief and the particular facts upon which the petitioner bases his claim; if, upon such consideration, the trial court finds no grounds for a hearing, the court is required to make and file findings of fact and conclusions of law as to the reasons for the

4

Case No. 2024-A-0054

dismissal and as to the grounds for relief relied upon in the petition." *State v. Lester*, 41 Ohio St.2d 51 (1975), paragraph two of the syllabus. "A trial court . . . issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph three of the syllabus.

{¶18} "The obvious reasons" for mandating findings are "to apprise petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly determine appeals in such a cause." (Citations omitted.) *Id.* at 291; *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19 (1988) (findings and conclusions allow a petitioner to make a "reasoned appeal" and for "meaningful judicial review"). The findings of fact and conclusions of law "'need not discuss every issue raised by appellant or engage in an elaborate and lengthy discussion'" but "only be comprehensive and pertinent to the issues presented in the petition and provide a basis of support for the court's conclusion." *State v. Rose*, 2024-Ohio-5053, ¶ 22 (11th Dist.), citing *Calhoun* at 291.

{¶19} The Ohio Supreme Court has held that findings similar to those made in the present case are sufficient to satisfy the requirements to make findings of fact and conclusions of law in dismissing a postconviction petition. *Carrion* at 19-20. It found this to be the case when the trial court included the following language in its judgment entry: "Petition for post-conviction relief denied on the basis of res judicata" since "[a]ll of the issues in Defendant's petition were or could have been raised in Defendant's direct appeal wherein the Court of Appeals found that the Defendant understood the consequences of his plea." *Id.* at 19. *Also State ex rel. Parker v. Russo*, 2012-Ohio-541,

5

¶ 1 (entry denying a petition on the grounds that the "claims are barred under the doctrine of res judicata, which claims could have or have been raised on direct appeal" contained "sufficient findings and conclusions to apprise [defendant] of the grounds for the judgment and to allow appellate courts to properly determine any appeal therefrom"). Similarly, this court rejected the argument that there were no findings of fact and conclusions of law where the court found that, upon reviewing the evidence, the petitioner's "claims are barred by *res judicata*" and the petitioner "either did or could have raised all twelve claims" previously. *State v. Glenn*, 1995 WL 243447, *6 (11th Dist. Mar. 17, 1995). In the present matter, the trial court found that, with the exception of the request for unsealing the grand jury transcript, "[a]ll of the information that the Defendant now submits to this Court was available to him at the time he filed his appeal", i.e., it is barred by res judicata. Thus, he was apprised of the trial court's reason for the denial of his postconviction petition, as is this court.

{¶20} *State v. Lucien*, 2023-Ohio-3128 (11th Dist.), cited by Knowlton in support of his argument, is distinguishable. *Lucien* involved a judgment that stated the petition was without merit and dismissed, without giving any reason for the dismissal. *Id.* at ¶ 4 and 10. It did not state that the claims were barred because they had previously been raised or otherwise give a rationale for dismissal, unlike was the case here. In *State v. Cepec*, 2024-Ohio-1412 (9th Dist.), also cited by Knowlton, the court did not issue a ruling on certain grounds raised for relief, which necessitated remand. Here, the court ruled on all issues raised, albeit jointly. *Id.* at ¶ 12-13.

{¶21} The first assignment of error is without merit.

{¶22} In his second assignment of error, Knowlton argues that the trial court erred

6

Case No. 2024-A-0054

by failing to hold an evidentiary hearing since he was entitled to relief on one or more asserted constitutional grounds. We will consider the merits of his fourth through sixth assignments of error herein, since they reiterate the substantive arguments asserted in his postconviction petition.

{¶23} "To warrant an evidentiary hearing in a postconviction proceeding, a petitioner must submit evidence outside the record that sufficiently establishes that the petitioner is entitled to relief on one or more asserted constitutional grounds." *State v. Broom*, 2016-Ohio-1028, ¶ 29. "A trial court has the discretion to deny a postconviction petition without discovery or an evidentiary hearing if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate 'sufficient operative facts to establish substantive grounds for relief.'" *Id.*, citing *Calhoun* at paragraph two of the syllabus. Further, "a petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata." *State v. Miller*, 2018-Ohio-5192, ¶ 17 (11th Dist.).

{¶24} Knowlton raised the following arguments in his postconviction petition: 1. Trial counsel was ineffective by failing to do the following: properly cross-examine prosecution's witnesses when they gave inconsistent statements to police and introduce transcripts of their police interviews at trial, ensure witnesses were separated, subpoena medical records, request a jury instruction on Aggravated Assault, object to the prosecutor commenting on the defendant's right to remain silent, and provide Knowlton with complete photo exhibits; 2. Testimony from the police interview transcripts demonstrated Detective Howell manufactured evidence by leading witnesses to state that McBride handed the gun to a friend before approaching Knowlton, which led the

7

witnesses to commit perjury; 3. The prosecution knowingly used perjured testimony when it allowed witnesses to testify contrary to their statements in the police interviews and allowed McBride to testify he was hit three times when there was contrary evidence; 4. The prosecutor committed a Brady violation by withholding evidence that the witnesses would give testimony contrary to police interviews and not giving the defense text messages between McBride and the two men who accompanied him to the shooting; 5. Appellate counsel was ineffective for failing to raise various arguments; 6. Trial counsel was ineffective for failing to obtain testimony from a private investigator; 7. Trial counsel was ineffective for failing to ensure a defense witness was properly subpoenaed and failing to seek a continuance for him to appear; 8. The trial court erred by failing to instruct the jury on the inferior offense of Aggravated Assault where there was serious provocation; 9. Trial counsel was ineffective for failing to investigate a second firearm recovered near the crime scene; 10. The prosecution violated Knowlton's right to remain silent by vouching for the honesty of witnesses and commenting on Knowlton's failure to give statements on his behalf; 11. The prosecutor violated the "Golden Rule" by injecting statements of opinion at trial.

{¶25} The trial court decided that these arguments were barred by the doctrine of res judicata. "A petition for postconviction relief does not provide a petitioner a second opportunity to litigate his or her conviction." *State v. Hobbs*, 2011-Ohio-5106, ¶ 17 (11th Dist.). "The doctrine of *res judicata* establishes that 'a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal *from that judgment*, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of

8

conviction or on an appeal from that judgment.'" (Citation omitted.) *State v. D'Ambrosio,* 73 Ohio St.3d 141, 143 (1995). Appellant must provide competent, relevant, and material evidence outside of the trial court record in support of a postconviction petition to prevent the claim from being dismissed on res judicata grounds. *State v. Lacy*, 2020-Ohio-1556, ¶ 26 (11th Dist.), citing *Hobbs* at ¶ 18.

{¶26} Knowlton's First through Fourth Claims primarily relate to issues arising from what he characterizes as inconsistent testimony from witnesses and statements they made regarding whether McBride handed his friend, Scott Lindsay, his gun prior to approaching Knowlton. Knowlton contends that witnesses, particularly Lindsay, made statements that he did not do so during their police interviews but changed such statements at trial, argues that trial counsel should have questioned them further, the detective questioning the witnesses in their interviews encouraged them to state that McBride handed them the gun, and the prosecutor should not have allowed them to testify to facts different than those stated in their police interviews.

{¶27} These matters could have been raised in the direct appeal before this court. The record demonstrates that defense counsel did in fact raise this issue during the trial and referenced the police interview when cross-examining Scott Lindsay. She specifically inquired regarding whether Lindsay told police that McBride handed him the gun, pointing to his inconsistent statement in his police interview. Given this line of questioning, all of the issues Knowlton raises relating to this matter could have been raised on direct appeal. Even accepting that the transcripts of the police interviews were not made part of the record, this did not preclude Knowlton from raising the arguments he sets forth, as all of the facts necessary to raise such arguments, that Lindsay was inconsistent in his

9

statements regarding this issue, were present in the trial transcript. Further, Knowlton's argument that other witnesses, such as Justin Nemergut and Jerry Wheatly, may have been inconsistent with their trial testimony is rebutted by his own citations to the trial and interview transcripts, since they show these witnesses gave similar statements regarding whether they saw McBride hand the gun to Lindsay in both the interview and their testimony.

{¶28} Knowlton also argues other actions by trial counsel constituted ineffective assistance of counsel, such as the failure to separate witnesses and provide him with complete copies of photographs in evidence. However, whether the witnesses were separated and what photographs were introduced would have been apparent to Knowlton and part of the record at trial, such that these issues are barred by res judicata. *See State v. Hundley*, 2023-Ohio-2571, ¶ 19 (7th Dist.) (grounds for relief alleging ineffective assistance of counsel which "rely on what the trial transcripts establish, or do not establish" and which do not present "any evidence dehors the record to demonstrate that [the defendant] could not have made these arguments with information already in the original trial record" are barred by the doctrine of res judicata). To the extent that Knowlton reasserts the above arguments relating to ineffective assistance of counsel in his Fourth Assignment of Error, we find they lack merit for these reasons.

{¶29} Knowlton also argues in his Fourth Claim, and his Fifth Assignment of Error, that the prosecutor committed a Brady violation by withholding knowledge that the witnesses would testify contrary to their statements in their police interviews, allowing false testimony, and by not providing the defense with text messages between McBride and his friends. As to the testimony of the witnesses and whether it was consistent with

10

their interviews, this is again an issue that was clear at the time of trial. "To establish a *Brady* violation, a defendant must demonstrate (1) that the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) that the evidence was willfully or inadvertently suppressed by the state, and (3) that the defendant was prejudiced as a result." *State v. George*, 2024-Ohio-2125, ¶ 29 (11th Dist.). As to the issue of Knowlton being provided text messages between McBride and his friends, Knowlton's motion contended that there were references to possible text conversations between them made during the trial, but no such messages were provided in discovery. However, Knowlton does not attach any such messages or otherwise show that the State was actually in possession of this evidence, the content of such messages, or that these messages would have been favorable to the defense.

{¶30} Finally, even presuming that the issue regarding whether Detective Howell tried to influence the witnesses could not have been raised previously since the full transcripts of the police interviews were not made part of the record on appeal, this argument would lack merit. *See State v. Wade*, 2022-Ohio-1006, ¶ 31 (11th Dist.) (although the trial court dismissed on the grounds of res judicata, the appellate court can consider whether there were substantive grounds for relief). The questioning cited by Knowlton in his brief demonstrates that Howell brought up with each witness the issue of whether McBride handed the gun to Lindsay, a relevant question given that police were trying to establish whether McBride was armed when he approached Knowlton. Knowlton does not cite anything in the record that showed Howell coerced the witnesses or otherwise used improper tactics to obtain their statements. This issue does not present sufficient operative facts to establish substantive grounds for relief as required to warrant

11

Case No. 2024-A-0054

an evidentiary hearing.

{¶31} Knowlton's Fifth Claim, relating to the failure of appellate counsel to raise certain issues, was not properly advanced in a postconviction petition. *State v. Hermison*, 2008-Ohio-2918, ¶ 26 (11th Dist.) ("claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to R.C. 2953.21") (citation omitted).

{¶32} In his Sixth and Seventh Claims, and his Fourth Assignment of Error, Knowlton raises additional claims relating to the alleged ineffectiveness of trial counsel. However, these were again claims that were evident from the record at the time of trial and thus should have been raised on direct appeal. Knowlton argues that a report of a private investigator should have been obtained and introduced since funds were allotted for it, but whether such testimony was acquired and presented can be reviewed on the face of the record. *See State v. Gau*, 1999 WL 289140, *7 (11th Dist. Dec. 11, 1998) (failure to secure witness testimony should have been raised on direct appeal). Similarly, issues relating to the failure to properly subpoena a defense witness and obtain a continuance for the presentation of his testimony lack merit for the same reasons.

{¶33} Claims relating to the failure to object to certain testimony, failure to object to prosecutor's comments at trial, failure to review certain evidence with the defendant, failure to subpoena medical records, and failure to object to improperly authenticated records all could have been raised on direct appeal. Further, we observe that some of these issues were indeed raised by Knowlton in his November 28, 2023 Application to Reopen Appeal filed following resolution of his direct appeal, evidencing that he was in fact able to make such arguments. That appellate counsel did not raise these arguments

does not warrant examining them at a postconviction stage, as Knowlton was permitted to raise them and they were fully addressed in this court's January 24, 2024 Judgment Entry overruling his application.

{¶34} In his Eighth Claim, as well as in his Sixth Assignment of Error, Knowlton argues that the trial court erred by failing to instruct the jury on the lesser offense of Aggravated Assault due to serious provocation by the victim, noting evidence in the record that the victim sent text messages giving rise to the confrontation. This argument could have been raised on direct appeal, as it is based on evidence that was in the record at the time of appeal, i.e., that there was a conflict between Knowlton and McBride relating to alleged abuse of the children and that McBride came to Knowlton's location to engage in a conflict.

{¶35} In fact, Knowlton did raise this issue before this court in his Application to Reopen Appeal. This court rejected the argument, finding that, "[g]iven the limited evidence to support a finding that Knowlton was acting in a sudden passion or fit of rage, we do not find error in the trial court's failure to give such instruction." *State v. Knowlton*, 11th Dist. Ashtabula No. 2023-A-0013 (Jan. 24, 2024). Knowlton argues that there is evidence outside of the record regarding abuse of his children by the victim, which supports a claim of sufficient provocation. However, there was already evidence of such allegations admitted through the text messages between Knowlton and the victim so such evidence would have no bearing on the decision already issued on this matter.

{¶36} In his Ninth Claim, Knowlton argues that trial counsel was ineffective by failing to investigate a second firearm that was recovered at the scene of the shooting, which was black and did not match the description of the silver firearm thrown by Lindsay

13

after the shooting.  This argument is again barred by res judicata.  Officer Howell testified at the trial that a black gun was recovered and included this detail in his police report. The conflict in the colors of the guns was evident from the trial record and could have been raised on appeal.

{¶37}  The Tenth and Eleventh Claims relate directly to statements made by the prosecutor at trial, all of which were contained in the record and could have been raised on direct appeal.  *State v. Peyatt*, 2021-Ohio-3310, ¶ 17 (7th Dist.) ("claims of ineffective trial counsel and improper comments by the assistant prosecutor at trial should have and could have been brought on direct appeal since the facts concerning these claims occurred during the trial").

{¶38}  The second and fourth through sixth assignments of error are without merit.

{¶39}  In his third assignment of error, Knowlton argues that the trial court failed to address his motion for leave to file a motion for new trial and the arguments contained therein individually or provide adequate findings of fact and conclusions of law.

{¶40}  "We review a trial court's ruling on a motion for leave [to file a motion for a new trial] for an abuse of discretion."  *State v. Oneil*, 2023-Ohio-1089, ¶ 18 (11th Dist.). "The term is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record."  *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.).  An abuse of discretion is the "trial court's 'failure to exercise sound, reasonable, and legal decision-making.'"  *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black Law's Dictionary* (8th Ed. 2004).

{¶41}  "Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict

14

was rendered . . . unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial. . . ." Crim.R. 33(B). A motion for new trial on the grounds of newly discovered evidence "shall be filed within one hundred twenty days" of the verdict. *Id.* "If . . . the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id.*

**{¶42}** The substance of Knowlton's argument under this assignment is that the court addressed the request for leave jointly with the postconviction petition and did not provide adequate findings of fact and conclusions of law.

**{¶43}** It has been consistently held that a judge is not required to issue findings of fact and conclusions of law when denying a Crim.R. 33 motion for a new trial. *State ex rel. Collins v. Pokorny*, 86 Ohio St.3d 70 (1999); *State v. Williams*, 2014-Ohio-4883, ¶ 26 (11th Dist.); *State v. Johnson*, 2023-Ohio-918, ¶ 21 (7th Dist.) ("[t]he plain language of Crim.R. 33 does not require the court to issue findings of fact and conclusions of law when denying a motion thereunder"). It was not required to make specific findings on the issues raised in his request for leave.

**{¶44}** Further, Knowlton fails to provide any authority that the lower court could not jointly address the postconviction petition and the motion for a new trial in the same entry. The authority he does cite, *State v. Cannon*, 2019-Ohio-3941 (1st Dist.), is not applicable to this point. *Cannon* held that the trial court erred by overruling the motion for a new trial rather than ruling only on the issue of whether leave should be granted to file a motion for new trial. *Id.* at ¶ 16. It did not address whether a motion for postconviction

15

petition and a request for leave to file a motion for new trial could be addressed jointly in the same judgment entry.

{¶45} Knowlton's appellant's brief does not provide substantive arguments pointing to an abuse of discretion in the denial of his request for leave. In his reply brief, he cites the existence of items of evidence which were not available to him at the time of his appeal, including letters, transcripts, and affidavits. The jury issued its verdict on January 9, 2023, and the motion for a new trial was filed on April 8, 2024, well beyond the deadline for timely filing. To prevail on a motion for leave to file his motion for a new trial, he was required to show that he was unavoidably prevented from obtaining such evidence. Knowlton does not present an argument demonstrating why he could not have requested and received the transcripts to the police interviews, affidavits, or any other evidence he cites prior to the date of filing his motion for leave.

{¶46} While Knowlton stated in his request for leave that he was prevented from obtaining certain evidence due to his incarceration, courts have found that "the fact of [a defendant's] incarceration, without more, does not amount to clear and convincing proof that he was unavoidably prevented from discovering the evidence within the time limitations of Crim.R. 33(B)." *State v. Smith*, 1998 WL 404458, *5 (2d Dist. Mar. 27, 1998); *State v. Barnes*, 2018-Ohio-1585, ¶ 29 (5th Dist.). Knowlton's failure to provide additional argument to support his delay justified the trial court's decision to deny his request and such action did not constitute an abuse of discretion. *See Barnes* at ¶ 29 ("[a]ppellant's ability to file appeals as well as a motion to re-open one appeal, the motions for a new trial and this pro se appeal belie his complaint that incarceration hampered his ability to access the legal system to guard his interests").

16

Case No. 2024-A-0054

{¶47}　The third assignment of error is without merit.

{¶48}　For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, denying Knowlton's postconviction petition and request for leave to file a motion for a new trial, is affirmed.　Costs to be taxed against appellant.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

17